UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT C. ADLER,<br><br>                    Plaintiff,<br><br>          -against-<br><br>PAYWARD, INC. d/b/a KRAKEN,<br><br>                    Defendant. | Case No. 1:18-CV-08100 (PAC) (DCF) |

## MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS AND
## <u>IN SUPPORT OF CROSS-MOTION TO AMEND THE COMPLAIT</u>

MARION & ALLEN, P.C.
488 Madison Avenue
Suite 1120
New York, New York 10022
(212) 658-0350

*Attorneys for Plaintiff*

## Table of Contents

PRELIMINARY STATEMENT................................................................1

FACTS ……… ...................................................................................2

ARGUMENT ...................................................................................2

**POINT I. <u>THE RULE 12 STANDARD</u>**.....................................2

**POINT II.   PLAINTIFF DULY ALLEGES THAT A CONTRACT
               <u>EXISTED AND WAS BREACHED</u>**..................................4

**POINT III.  PLAINTIFF DULY ALLEGES THAT A REFERRAL
               <u>BONUS POLICY EXISTED AND WAS BREACHED</u>**.............11

**POINT IV. PLAINTIFF'S CAUSE OF ACTION FOR A BREACH
               OF GOOD FAITH AND FAIR DEALING IS VALID
               <u>AND DULY ALLEGED</u>** .....................................................11

**POINT V.  PLAINTIFF'S FOURTH CAUSE OF ACTION IS DULY
               ALLEGED IN THE AMENDED COMPLAINT AND
               <u>SHOULD NOT BE DISMISSED</u>**.....................................14

**POINT VI. PLAINTIFF'S FIFTH CAUSE OF ACTION IS DULY
               ALLEGED IN THE AMENDED COMPLAINT AND
               <u>SHOULD NOT BE DISMISSED</u>** .....................................15

**<u>CONCLUSION</u>**................................................................................19

TABLE OF AUTHORITIES

*511 W. 232nd Owners Corp. v. Jennifer Realty Co.*,
98 N.Y.2d 144, 746 N.Y.S.2d 131, 135 (2002). ....................................................12

*Automotive Management Group, Ltd.*
239 A.D.2d 450 (2d Dep't 1997) ...............................................................................4

*BLT Rest. Grp. LLC v. Tourondel*
855 F. Supp. 2d 4, 15 (S.D.N.Y. 2012) ..........................................................2, 4, 11

*Dalton v. Educational Testing Service*
87 N.Y.2d 384, 639 N.Y.S.2d 977, 979 (1995) .......................................................11

*Derven  v. PH Consulting, Inc.*
427 F. Supp.2d 360 (S.D.N.Y. 2006) ......................................................................17

*EBC I, Inc. v. Goldman Sachs & Co.*
5 N.Y.3d 11, 799 N.Y.S.2d 170, 177 (2005). .........................................................12

*Giuntoli v. Garvin Guybutler Corp.*
726 F. Supp. 494, 507-508 (S.D.N.Y. 1989) ..........................................................10

*Krauss v. Manhattan Life Ins. Co.*
643 F.2d 98, 100 (2d Cir. 1981) .................................................................................4

*McBride v New York Prop. Ins. Underwriting Assn.*
152 A.D.3d 505 (2d Dep't 2017) .............................................................................14

*Morlee Sales Corp. v. Manufacturers Trust Co.*
9 N.Y.2d 16, 18 (1960) ..............................................................................................4

*Orlander v. Staples, Inc.*
802 F. 3d 289, 294 (2d Cir. 2015) .........................................................................4, 5

*Reilly v NatWest Mkts. Group Inc.*
181 F.3d 253, (2d Cir. 1999), *cert. denied*, 528 U.S. 1119
120 S. Ct. 940, 145 L. Ed. 2d 818 (U.S. 2000). ....................................................17

*Ryan v. Kellog P'ners Institu'l S'vcs*
19 N.Y.3d 1 (2012). ..........................................................................16, 17, 18

*Sabetay v. Sterling Drug, Inc.*
69 N.Y.2d 329, 514 N.Y.S.2d 209 (1987). ...........................................................12

*Tiffany Tower Condominium, LLC v Insurance Co. of the Greater N.Y.*
164 A.D.3d 860, 861-862 (2d Dep't 2018) ...........................................................13

*Van Valkenburgh, Nooger & Neville v Hayden Publishing. Co. Inc.*
30 N.Y.2d 34, 330 N.Y.S.2d 329,
*cert denied* 409 U.S. 875, 93 S. Ct. 125 (1972). ..................................................11

*Wakefield v. Northern Telecom, Inc.*
769 F.2d 109 (1985) ......................................................................................13

*Zurich Ins. Co. v Shearson Lehman Hutton*
84 N.Y.2d 309, 317, 401 (1994). ........................................................................4

Fed. R. Civ. P. 12 ...................................................................................1, 2, 17, 18

Fed. R. Civ. P. 15 ...................................................................................15

N.Y. Labor Law § 190 ...........................................................................14, 16, 17, 18

N.Y. Labor Law § 193 ...........................................................................16, 18

N.Y. Labor Law § 195 ...........................................................................15

N.Y. Labor Law § 198 ...........................................................................14, 15, 16

Plaintiff Robert Adler ("Adler" or "Plaintiff") respectfully submits this Memorandum of Law in opposition to the motion to dismiss the Complaint by Defendant Payward, Inc. ("Defendant") and in support of the cross-motion to amend the Complaint. Whereas the motion was made pursuant to F.R.Civ.P. §§ 12(b)(1) and 12(b)(6), the facts herein are based upon the complaint in this action (the "Complaint").

## PRELIMINARY STATEMENT

Plaintiff's motion to dismiss this action makes three primary arguments. First that they want their signed contract, which they wrote, to be ruled to not be a contract, and therefore void. Their argument is show to be without merit, but the scope of their arguments cannot be ignored: the nationwide effect of the ruling they seek would be that employment letters would be barred from enforcement in the United States. Defendant's second focus is to avoid responsibility under the requirement of good faith and fair dealing. As set forth below, the law disagrees with their arguments. Finally, Defendants focus on the Labor law claims, which did require some amendment. Thus, the cross-motion to amend focuses on these claims. Finally they conclude that any remaining claims will not meet the monetary threshold for Federal Court, voiding Federal jurisdiction. Based on the law set forth below, Plaintiff respectfully submits that Defendant's motion should be denied in its entirety.

## FACTS

Whereas this is a motion was made pursuant to F.R.Civ.P. §§ 12(b)(1) and 12(b)(6), the facts herein are based upon the Complaint. Defendant failed to enter the Complaint as an Exhibit, but it is in the record at Document 1, and reproduced for the Court's convenience at Exhibit A hereto. In summary, Adler was hired by Defendant to work in New York on or about August 23, 2017 under a written, signed and countersigned employment letter (the "Employment Contract") which left open that its terms would be *supplemented* later, as opposed to requiring a new contract. Adler worked for the trading desk from September 15, 2017 until Plaintiff was terminated on May 29, 2018 with an effective termination date of May 31, 2018. When Defendant failed to compensate Adler as his contract required, legal action was necessary.

## ARGUMENT

### POINT I
### THE RULE 12 STANDARD

When deciding a Rule 12(b)(6) motion, the Court reviews "the four corners of the complaint, any documents attached to that pleading or incorporated into it by reference, any documents that are 'integral' to the plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the court may take judicial notice." *BLT Rest. Grp. LLC v. Tourondel*, 855 F. Supp. 2d 4, 15 (S.D.N.Y. 2012);

2

*See*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).  The Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *See*, *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016); *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). From this review the Court determines if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 663 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.

A Court should not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).  In sum, "the Court's task is simply to determine whether the plaintiff has a legal right to seek relief based on the allegations in the complaint." *Henschke v. New York Hospital-Cornell Medical Center*, 821 F. Supp. 166, 168 (S.D.N.Y. 1993).  The Court will not dismiss the case unless it is satisfied that the complaint cannot state any set of facts that would entitle Plaintiff to relief. *See*, *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994)

3

In cases where the moving party professes to offer "evidence," such as the motion at bar, the Court discards and does not consider such external papers. *See*, *BLT Rest. Grp. LLC v. Tourondel*, 855 F. Supp.2d 4, 15 (S.D.N.Y. 2012); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

Whereas the Employment Contract was negotiated in New York by a resident of New York who worked for the Defendant company in a New York office, it is clear that New York law Applies.[1]

## POINT II

### PLAINTIFF DULY ALLEGES THAT A CONTRACT EXISTED AND WAS BREACHED

Under New York law, to allege a breach of contract claim, a plaintiff must allege "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *See*, *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015). The contract is "to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed." *Automotive Management Group, Ltd.*, 239 A.D.2d 450, 451 (2d Dep't 1997); *Morlee*

---

1.    Because this is a diversity case, we apply the choice-of-law rules of the forum State, New York. *See, Krauss v. Manhattan Life Ins. Co., 643 F.2d 98, 100 (2d Cir. 1981).* "New York has long recognized the 'center of gravity' as the appropriate analytical approach to choice of law questions in contract cases" *Zurich Ins. Co. v Shearson Lehman Hutton*, 84 N.Y.2d 309, 317, 401 (1994).

*Sales Corp. v. Manufacturers Trust Co.*, 9 N.Y.2d 16, 18 (1960).

Here, the *Orlander* elements are easy to meet.  There is formation of a signed and negotiated employment contract between the parties where labors are given consideration of compensation by payment, shares and a 3.5% bonus on profits of the Trading Desk that Plaintiff would work.  *See*, Complaint ¶¶ 25-26, Exhibit A. Plaintiff's performance is alleged. *See*, Complaint ¶¶ 32-33.  Defendant's breach and failure to perform is alleged. *See, inter alia*, Complaint ¶¶ 63-64.  Damages are alleged. *See, inter alia*, Complaint ¶ 67.   Thus, under New York law, a contract was formed.

Defendant commenced its attack by claiming to the Court that "Plaintiff fails to allege that any contract existed or was breached." *See*, moving brief at page 6.  Of course, Defendant's argument is untrue. Complaint paragraph 25 alleges, "On or about August 23, 2017, Payward offered a one-page employment agreement to Plaintiff which Plaintiff counter-signed (the "Employment Contract") a copy of which is at Exhibit A hereto." *See*, Exhibit A. Thus a Contract is alleged.  The three signatures on the Employment Contract evince an intent to be bound by it.  *See*, Exhibit A.   Defendant later contradicts its opening argument and admitted that Plaintiff had indeed alleged an employment contract.  *See*, moving brief at bottom of page 7.

Similarly, the Complaint paragraph 25 alleges "Payward materially breached the Employment Contract by failing to remit to Plaintiff the bonus commissions that Plaintiff is due pursuant to the Employment Contract."  Clearly, Plaintiff's arguments denying the existence of an allegation of breach allegations is without merit.  Contrary to their opening argument, Defendant also admitted later in its brief that Plaintiff alleged a breach of the Employment Contract.  *See*, moving brief at bottom of page 7.

Defendant next argues that a claim for wrongful termination should be dismissed.  However, each cause of action in the Complaint is well-labeled, and no wrongful termination cause of action is alleged in this case – the case is about non-payment of earned compensation.

Defendant's next argument is that the employment contract is merely an "agreement to agree," which is an equally meritless argument. The basis for Defendant's position is apparently the statement that "the Company expects to supplement this letter, after you become an employee . . ." However, the word "*supplement*" is not the word 'supplant', nor the word 'supersede.'  In plain English, it is an expression that any further terms would *add to* the terms of the Employment Contract embodied in that letter, which would continue in force.

Moreover, "Payward or its agents, were the author(s) of the Employment Contract." Complaint, at paragraph 27.  Thus they selected the word "supplement."

6

In construing a contract, the writing must be "read as a whole to determine its purpose and intent." *W.W.W. Assoc. v Giancontieri*, 77 N.Y.2d 157, 162 (1990).  The purpose and intent of an offer letter made to be accepted and countersigned as an employment agreement, is clear and plain. The Court gives giving a "practical interpretation of the expressions of the parties to the end that there be a realization of their reasonable interpretations." *Sutton v East Riv. Sav. Bank*, 55 N.Y.2d 550, 555 (1982)(internal references omitted).[2]  The plain and practical interpretation of the Employment Contract is an offer letter to offer a job and obtain the agreement of the Plaintiff to the terms of employment.

That Employment Contract was signed by the CEO of Defendant Jesse Powell, Defendant's head of the Trading Desk Jonathan Silverman, and by Robert Adler in the area provided by Defendant for Plaintiff's countersignature and the date agreed.

The Employment Contract sets forth that Plaintiff would receive a position on the Institutional Sales and Trading Desk, it sets forth Plaintiff's start date, salary, stock options, vesting schedule, and a bonus of 3.5% of the Trading Desk profit.

---

[2]     There is no ambiguity here.  However, if any were found, it has long been the rule that any ambiguity in the contract is to be strictly construed against the drafter of such language, in this case, the Defendant. *151 W. Assoc. v Printsiples Fabric Corp.*, 61 N.Y.2d 732, 734 (1984).

Defendant cites *Miller v. Tawil*, 165 F.Supp.2d 487 (S.D.N.Y. 2001), for its contention that some offer letters are unenforceable.  However, *Miller* involved a very different set of circumstances.  In that case, there were two letters, which the Court sorted by date as the June 29 letter and the September 2 letter.  The June 29 letter was not a signed agreement, and stated instead that a contract would be prepared. *See*, *Id.* at 489.  Therefore, as Defendant quotes, in language *not* applicable to the case at bar, the June 29 *Miller* letter was a preliminary agreement which did not create a binding contract. *See*, moving brief at bottom of page 7.

Here, on the other hand, the letter is a signed contract, which anticipated *supplemental* terms, not a new agreement.  The September 2 letter in *Miller* said that it was a monthly "interim agreement" until the employment and compensation agreements could be drafted. *See*, *Miller*, at 490.  Plaintiff in *Miller* was seeking to cause that to be binding as an *annual* employment agreement, but the Court held that the September 2 letter in *Miller* expressly limited itself to a monthly agreement and could not bind as an annual employment agreement. *See*, *Id.* at 492.  That issue is not present in this case; Adler is not seeking to expand the Employment Contract, but only to enforce its express terms.  The *Miller* Court was clear that "courts [must] enforce and preserve agreements that were intended [to be] binding, despite a need for further documentation or further negotiation, for it is the aim of contract law to

8

gratify not defeat, expectations." *See*, *Id.* at 491.   That is the *Miller* language applicable to this action.

Thus, the *Miller* case is inapplicable here.   Though both cases involve letters, here we have a countersigned agreement, which does not state any intent to not be binding until an agreement is reached.   In fact, it expressly anticipates it will be "supplemented," indicating that the Employment Agreement in the letter will remain in force.

Defendant also raises the case of *Total Telcom Group Corp. v. Kendal on Hudson*, 157 A.D.3d 746 (2d Dep't 2018), but that case is wholly inapplicable because it involved a suit for telecom fees when the alleged 'contract' had no prices or fees on it at all. Such a case has no applicability here.

Defendant next claims that the bonus of 3.5% of the Trading Desk profit should be voided because an intent was expressed to supplement its terms later.   Defendant also claims that there are alternative methodologies of calculation, tranches and other features of its imagination, but these are not even mentioned in the Employment Contract – only the direct calculation of 3.5% of the Trading Desk profit.   In any case, "provisions in a contract are not ambiguous merely because the parties interpret them differently." *Mount Vernon Fire Ins. Co. v. Creative Housing Ltd.*, 88 N.Y.2d 347, 352, 645 N.Y.S.2d 433 (1996).   Thus Defendant's ability to imagine different

way to approach a direct calculation of 3.5% of the Trading Desk profit does not create an ambiguity.

Defendant then claims that "Plaintiff has failed to allege that a contract existed as to any specific bonus, much less that one was breached." However Complaint paragraph 29 alleges: "Under the Employment Contract, Plaintiff was to work at a New York Institutional Sales and Trading Desk, (the "Trading Desk") receive a base salary plus participation in a stock option plan, plus a commission of 3.5% of the Trading Desk profit." Paragraphs 63-67 of the Complaint state: "Payward materially breached the Employment Contract by failing to remit to Plaintiff the bonus commissions that Plaintiff is due pursuant to the Employment Contract. Said breach was a breach of the 5th paragraph of the Employment Contract. Payward terminated Plaintiff's employment without cause. Payward failed and refused to pay Plaintiff his bonus commissions despite due demand. As a direct and proximate result of Payward's breach of the Employment Contract, Plaintiff has been damaged in an amount to be determined at trial, but not less than $700,000." Therefore, Plaintiff's claim that these allegations do not exist in the Complaitn is factually incorrect.

Therefore a binding contract, the breach thereof and the damages therefrom are fully and duly alleged.

## POINT III

### PLAINTIFF DULY ALLEGES THAT A REFERRAL
### BONUS POLICY EXISTED AND WAS BREACHED

Defendant then attacks the Second Count seeking a referral bonus.  Defendant

admits that there was a referral bonus policy and that Defendant hired a Mr. Minier

referred to Defendant by Adler.  *See*, moving brief at bottom of page 10.  What

Defendant is arguing is that if a policy is not in a signed contract, it is unenforceable.

However in New York, the course of dealings between the parties "evidences an

implied promise" which is enforceable and is adequately pleaded.  *See*, *Giuntoli v.*

*Garvin Guybutler Corp.*, 726 F. Supp. 494, 507-508 (S.D.N.Y. 1989).

Defendants factual disagreements and defense allegations that Plaintiff would

not have been due compensation under unalleged technicalities of that policy is not

material for a motion to dismiss on the pleadings, and is subject to discovery.  *See*, *BLT*

*Rest. Grp. LLC v. Tourondel*, 855 F. Supp. 2d 4, 15 (S.D.N.Y. 2012).

## POINT IV

### PLAINTIFF'S CAUSE OF ACTION FOR A BREACH
### OF GOOD FAITH AND FAIR DEALING IS VALID AND DULY ALLEGED

Defendant then focuses on the Third Cause of Action, raising Defendant's beach

of good faith and fair dealing.  "Implicit in all contracts is a covenant of good faith and

fair dealing in the course of contract performance." *Dalton v. Educational Testing*

*Service*, 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 979 (1995); *Van Valkenburgh,*

*Nooger & Neville v Hayden Publishing. Co. Inc.*, 30 N.Y.2d 34, 45, 330 N.Y.S.2d 329,

*cert denied* 409 U.S. 875, 93 S. Ct. 125 (1972).

An implied covenant of good faith and fair dealing, "embraces a pledge that

neither party shall do anything which will have the effect of destroying or injuring the

right of the other party to receive the fruits of the contract." *511 W. 232nd Owners*

*Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153, 746 N.Y.S.2d 131, 135 (2002).  In

order to plead a breach of the implied covenant of good faith and fair dealing, it must

be alleged that one injured another party's "right to receive the benefits of their

agreement." *EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y.3d 11, 22, 799 N.Y.S.2d 170,

177 (2005).

Defendant claims that there is no implied term of good faith and fair dealing in

at-will employment, but that is an overgeneralization supported only by selecting and

applying broad language in decisions that does not apply in the sales commission

context.  The language Defendant cited derives from decisions where an implied

covenant of good faith in employment contracts is claimed to have been inconsistent

with the employer's right to terminate the employment at any time, and cannot be used

to challenge a firing.  *See*, *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 336, 506

N.E.2d 919, 514 N.Y.S.2d 209 (1987).  However, where a firing is used to void the

payment of sales commissions, as alleged here, the rule is different.  This issue was determined on point in the matter of *Wakefield v. Northern Telecom, Inc.*, 769 F.2d 109 (1985) which held that where a covenant of good faith is necessary to enable one party to receive the benefits promised for performance, it is implied in law to effectuate the intent of the parties (*Id*. at 112).  The *Wakefield* court implied a covenant of good faith into the commission agreement at issue there because an unfettered right to avoid payment of commissions would be counter to the purpose of the contract itself (*Id*. at 112-13).   Despite the Defendant's claim otherwise, one cannot un-earn sales commissions earned.

Defendant then attacks the breach of good faith and fair dealing as duplicative of the contract cause of action.   However, those causes of action are not duplicative because breach of good faith and fair dealing can be awarded damages beyond the express contract compensation.  Where, as here, the Plaintiff sufficiently stated a cause of action to recover consequential damages for breach of the implied covenant of good faith and fair dealing, and the amount of damages available or claimed is not identical to the amount of damages available under the contract claim, the "cause of action is not duplicative of the breach of contract cause of action." *Tiffany Tower Condominium, LLC v Insurance Co. of the Greater N.Y.*, 164 A.D.3d 860, 861-862 (2d Dep't 2018) (affirming the refusal to dismiss a claim for breach of the implied covenant of good

faith and fair dealing based upon the defendant's claim that it was duplicative); *McBride v New York Prop. Ins. Underwriting Assn.*, 152 A.D.3d 505, 506 (2d Dep't 2017).

In the cases reviewed by Adler's counsel, only in those cases where a plaintiff seeks the exact same damages have those causes of action been found to be duplicative.

The breach of the implied covenant of good faith and fair dealing is also not duplicative because   Defendant still disputes the scope and existence of the Employment Contract, making the damages available thereunder uncertain.  Further, the amount of damages claimed for the breach of the implied covenant of good faith and fair dealing encompasses damages for the breach of the employee referral bonus and any other damages he Jury determines was suffered due to Defendant's bad faith.

Therefore, the claim for breach of good faith and fair dealing should not be dismissed.

## POINT V

### PLAINTIFF'S FOURTH CAUSE OF ACTION IS DULY ALLEGED IN THE AMENDED COMPLAINT AND SHOULD NOT BE DISMISSED

Defendant then seeks to dismiss the Fourth Cause of Action brought pursuant to the New York Labor Law.  Defendant correctly pointed out that New York Labor Law § 191-C is applicable to manufacturing whereas New York Labor Law § 198 applies generally to the same effect of granting attorney's fees, double damages, and a penalty

14

for non-payment of a judgment.  Therefore, a cross-motion to amend supplies causes of action which fix the pleading issues Defendant's motion complains of.  Generally such leave to amend is freely given. See, F.R.Civ.P. 15(a)(2).

With that in place, Defendant's first argument that it is not a manufacturing principal is moot because as amended, Defendant is an employer within the definition of  New York Labor Law § 190(3), and pursuant to New York Labor Law § 198(1-a) the employee is entitled to the same relief, specifically, costs, attorney's fees and double damages.

Defendant's second argument, which is that damages under 191-C are not available to employees and Plaintiff is an employee, that argument will also be moot because New York Labor Law § 198 is written to benefit employees specifically, whether the action is brought by the Labor Commissioner or by the Employee.

Those are the only objections Defendant raised against the Fourth Couse of action, and all are mooted by the proposed amendment.

## POINT VI

### PLAINTIFF'S FIFTH CAUSE OF ACTION IS DULY ALLEGED IN THE AMENDED COMPLAINT AND SHOULD NOT BE DISMISSED

Defendant then seeks to dismiss the Fifth Cause of Action brought pursuant to the New York Wage Theft Prevention Act, which is New York Labor Law § 195-198. First Defendant claims that an element is alleged without supporting facts.  However,

Defendant does not say which element they claim to be insufficiently pleaded. Simply put, the Fifth Cause of Action begins with the customary incorporation of all prior facts, so one must read with the facts already alleged in mind.

Then Defendant brings out a shotgun splatter of half-a-dozen half-made arguments.

Defendant complains that the Double damages under the Wage Theft Prevention Act are found in the remedies section 198, but that is not a basis to dismiss.

Defendant then notes that other violations of the Labor Law need to be alleged, not merely section 198. While other violations were alleged in the Complaint, the section numbers of some of the violations are highlighted in the Amended Complaint, curing any confusion. *See*, Exhibit B, ¶¶ 81-82.

Defendant then complains that there can be no labor law violation if there is no employment contract, however there is an Employment Contract as set forth above.

Next, Defendant argues that there is no allegation that Plaintiff has special rights to be paid after termination. It seems Defendant is of the opinion that a person can lose rights to accrued pay. However the Court of Appeals has already squarely rejected such arguments. "[B]onus payments, already due and vested . . . fall within the definition of wages in § 190. Since Ryan's bonus therefore constitutes "wages" within the meaning of Labor Law § 190 (1), [the employer's] neglect to pay him the bonus

violated Labor Law § 193." *Ryan v. Kellog P'ners Institu'l S'vcs*, 19 N.Y.3d 1, 23-24 (2012). Thus firing an employee doesn't un-earn their earned compensation.

Defendant next argues that Plaintiff is sufficiently managerial as to be exempt from wage protections. However, such an argument, especially unsupported, is based on allegations of fact, subject to discovery, and are not fodder for a Rule 12 motion.

Finally Defendant tosses out a theory that the Labor Law itself is an illegal liquidated damages penalty. *See*, moving brief at 16. Truly the wheels have come off the cart and Defendant is arguing everything it can think of. Defendant cites *Derven v. PH Consulting, Inc.*, 427 F. Supp.2d 360 (S.D.N.Y. 2006), but *Derven* has nothing to do with this issue, it relates to the limitations of Labor Law §191-a cured in the Amended Complaint.

Defendant then claims that "wages" under the Labor law do not include commissions, even though the definition of "wages" in Labor Law § 190(1) expressly includes commissions. However, this issue is not new to this case; Incentive pay constitutes a "wage" when it is actually earned and vested. *See*, *Reilly v NatWest Mkts. Group Inc.*, 181 F.3d 253, (2d Cir. 1999), *cert. denied*, 528 U.S. 1119, 120 S. Ct. 940, 145 L. Ed. 2d 818 (U.S. 2000). Further, as cited above, the New York Court of Appeals has clarified this issue. *Ryan*, *supra*, involved a bonus, not unlike Adler's, in that it was tied to his performance. Here, when Adler's trading desk made more profit,

his bonus, by the 3.5% formula in the Employment Contract also increased. *See*, Exhibit A; Amended Complaint ¶¶ 41-43.  Such "bonus payments, already due and vested . . . fall within the definition of wages in § 190.  Since Ryan's bonus therefore constitutes "wages" within the meaning of Labor Law § 190 (1), [the employer's] neglect to pay him the bonus violated Labor Law § 193." *Ryan v. Kellog P'ners Institu'l S'vcs*, 19 N.Y.3d 1, 23-24 (2012).

The cases cited by Defendant stand for the proposition that a wholly discretionary bonus would not be wages as they do not vest until granted, but that has no bearing on this action.

Defendant's final claim is that *if* the Court dismisses all of the above allegations, then any remaining claims would fall under the monetary threshold for diversity jurisdiction.

Whereas Plaintiff respectfully submits that the Complaint, and the Amended Complaint should withstand the Rule 12 motion, this final argument is moot.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff respectfully submits that this Court should deny the Defendant's motion to dismiss in its entirety, and grant Plaintiff's cross-motion to amend.

Dated: New York, New York
        February 1, 2019

Respectfully submitted,

ROGER K. MARION