USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/4/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
                                               :

ROBERT C. ADLER,                       :
                                              :
                      *Plaintiff,*           :
                                                :                 18 Civ. 8100 (PAC)
             *-against-*                :
                                                :
PAYWARD, INC. d/b/a Kraken,      :              **OPINION & ORDER**
                                                :
                      *Defendant.*       :
                                                :
-----------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

      Plaintiff Robert C. Adler brings this action seeking the enforcement of an employment contract he entered into with Defendant Payward, Inc. d/b/a Kraken ("Payward" or "the Company"). Defendant moves to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Dkt. 20). Plaintiff cross moves to amend the Complaint. (Dkt. 23). Defendant's motion to dismiss is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

      Plaintiff alleges[1] that Payward has operated as a Bitcoin exchange under the name "Kraken" since 2013. (Dkt. 1, ¶ 19). Payward operated an institutional trading business from its San Francisco headquarters and from an individual's home in Asia. (*Id.* ¶ 23). In April, 2017, Payward hired Jonathan Silverman to head its Institutional Sales and Trading Business and relocate

---

[1] The Court accepts as true all of Plaintiff's factual allegations and construes the complaint in the light most favorable to Plaintiff. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007); *see also GW Holdings Grp., LLC v. US Highland, Inc.*, 367 F. Supp. 3d 78, 81 (S.D.N.Y. 2019) ("Under Rule 12(b)(1), the court must accept all factual allegations in the complaint as true and draw inferences ... in the light most favorable to the plaintiff.").

the business to New York. (*Id.*) In May, 2017, Silverman recruited Plaintiff to work for him as Chief Operating Officer of the New York Institutional Sales and Trading Desk (the "Trading Desk"). (*Id.*) Payward flew Plaintiff to San Francisco in June, 2017, where members of Payward's senior management, including Chief Executive Officer Jesse Powell, Chief Brand Officer Christina Yee, Chief Operating Officer David Ripley, and Chief Financial Officer Kaiser Ng ("Ng") met with Plaintiff to discuss hiring him. (*Id.* ¶ 24).

On or about August 23, 2017, Payward offered Plaintiff a one-page employment agreement, drafted by Payward or its agents, which Plaintiff signed (the "Employment Contract"). (*Id.* ¶¶ 25-27; Ex. A). The terms of the Employment Contract entitle Adler to a base salary of $125,000 per year and to "20,000 stock options which will have[,] in addition to the terms specified in the stock option plan[,] a one-year cliff and a 6-year vesting schedule." (*Id.* Ex. A.)[2] The Employment Contract also states:

> In addition to the foregoing and per our prior discussions (which included your entitlement to a bonus equity to 3.5% of the Trading Desk Profit), the Company expects to supplement this letter, after you become an employee and after further discussion with you, with additional terms to be mutually agreed to, concerning the bonus calculation and targets, and other terms applicable to this position and to the Trading Desk's business proposal.

(*Id.*)

Adler worked at the Trading Desk from September 15, 2017 until he was terminated on May 29, 2018, with an effective termination date of May 31, 2018. (*Id.* ¶ 32). The Trading Desk office was originally located in Silverman's apartment but was eventually relocated to a WeWork office space at 205 East 42nd Street, where Alder supervised its build out. (*Id.* ¶ 31). When

---

[2] The Court may properly consider the Employment Contract on both motions because it is attached as an exhibit to the Complaint. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings.").

Silverman left Payward at the end of 2017, Adler assumed Silverman's obligation of managing the Trading Desk and reported directly to Powell. (*Id.* ¶ 42).  Alder never received negative feedback or a negative performance review during his time with Payward. (*Id.* ¶¶ 34-35).

Plaintiff received only his base salary compensation from Payward. (*Id.* ¶ 36).  In April 2018, Ng sent Plaintiff an email detailing his calculation for 2017 Trading Desk Profit. (*Id.* ¶ 46). At that time, he calculated Adler's 2017 commission at less than $20,000. (*Id.*)  Subsequently, Ng changed the calculation and sent Plaintiff an email stating that the Trading Desk had actually lost money from September 15, 2017 to December 31, 2017 and that as a result, Plaintiff was owed no commission. (*Id.*)  Ng's calculation of the 2017 Trading Desk expenses employed a 20% cost of capital, but Plaintiff told Ng that in his view, 20% was well above industry standard and should only have been 5%. (*Id.*)  Agreement was never reached, no changes were made to the Employment Contract, and Adler never received a commission. (*Id.* ¶ 52).

On May 21, 2018, Payward offered Plaintiff a new employment contract intended to supersede his original. (*Id.* ¶ 53).  Plaintiff asked a lawyer to review the proposed contract but was fired five days later. (*Id.* ¶¶ 54-55).  Although Plaintiff was told his role was being eliminated, he believes he was fired because Payward did not want to pay him his commissions. (*Id.* ¶ 56). Plaintiff estimates he is still owed approximately $700,000 in commissions as well as a $5,000 referral bonus for his successful referral of an employee, Nelson Minier, to the Company (*Id.* ¶¶ 58 -71).

Plaintiff filed the Complaint on September 5, 2018 alleging: (1) breach of contract for failure to pay commissions and wrongful termination; (2) breach of contract for failure to pay a referral bonus; (3) breach of the covenant of good faith and fair dealing; (4) failure to pay commissions in violation of New York State Labor Law ("N.Y. Lab. Law") § 191-C; and (5)

3

violations of an unspecified provision of the N.Y. Lab. Law and the New York Wage Theft Prevention Act ("WTPA") for failure to furnish wage statements. (*Id.*). The Complaint also alleges the Court has diversity jurisdiction over these state law claims pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. (*Id.* ¶¶ 7-9).

## DISCUSSION

### I.    Defendant's 12(b)(1) Motion

#### A.  Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Federal courts have diversity jurisdiction over state law claims pursuant to 28 U.S.C. § 1332 (a) where a dispute is between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332 (a). The party . . . asserting jurisdiction [has] the burden of proving by a preponderance of the evidence that subject-matter jurisdiction exists." *Turban v. Bar Giacosa Corp.*, No. 19-CV-1138 (JMF), 2019 WL 3495947, at *1 (S.D.N.Y. Aug. 1, 2019).

A defendant challenging jurisdiction based on the amount in controversy must overcome the presumption that "the amount in controversy a plaintiff states in the complaint is a good faith representation." *GW Holdings Grp., LLC v. US Highland, Inc.*, 367 F. Supp. 3d 78, 81 (S.D.N.Y. 2019). This presumption is rebutted "only if the defendant can show to a legal certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums." *Id.* (internal quotation omitted). "Additionally, when claims are based in state law, a court must look to state law to determine if a plaintiff's claims can meet the amount

4

in controversy requirement." *Geffner v. Iona Coll.*, No. 13 CIV. 1156 DAB, 2013 WL 5549922, at *3 (S.D.N.Y. Oct. 2, 2013). Even absent a specific objection from the defendant, the Court has "an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*." *Abdoulaye v. Cimaglia*, No. 15-CV-4921 (PKC), 2018 WL 1890488, at *2 (S.D.N.Y. Mar. 30, 2018) (quoting *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006)).

"When faced with a motion to dismiss pursuant to both Rule 12(b)(1) and 12(b)(6), a court should decide the jurisdictional question [under Rule 12(b)(1)] first because a disposition of a 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *GW Holdings Grp.*, 367 F. Supp. 3d at 80. Dismissals pursuant to Rule 12(b)(1) for want of jurisdiction are granted without prejudice. *See Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir.1999).

### B. Analysis

Plaintiff claims $705,000 for his breach of contract claims, $700,000 in commissions and $5,000 for the referral bonus. He also claims "double damages" on his breach of contract claims under N.Y. Labor Law § 191(1)(c), raising his damage calculation to $1,410,000. Plaintiff's remaining wage statement claim entitles him to a maximum of $5,000, *see* N.Y Lab. L. § 198(1)(d); *Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017), resulting in a total possible claimed recovery of $1,415,000. Removing Plaintiff's commission claim, however, reduces the amount in controversy to $15,000.[3] Thus, the Court's jurisdiction over this action turns on the viability of Plaintiff's commission claim.

---

[3] Although the Court need not reach the issue to resolve the motion, Plaintiff's belief that he is entitled to double damages under N.Y. Labor Law § 191(1)(c) is incorrect as a matter of law. *See Derven v. PH Consulting, Inc.*, 427 F. Supp. 2d 360, 369 n.6. (S.D.N.Y. 2006) ("N.Y. Labor L. § 191(1)(c) requires the timely payment of wages to commission salesmen, but does not provide for double damages or other penalties in the case of breach and does not create an independent cause of action apart from breach of contract."). Consequently, the maximum amount actually recoverable in this action is $10,000.

Plaintiff's sole basis for alleging entitlement to a commission is the Employment Contract. New York law, however, imposes "a strong presumption against finding binding obligation in agreements which include open terms, call for future approvals and expressly anticipate future preparation and execution of contract documents." *Miller v. Tawil*, 165 F. Supp. 2d 487, 492 (S.D.N.Y. 2001). Generally, "a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable." *Total Telcom Grp. Corp. v. Kendal on Hudson*, 68 N.Y.S.3d 491, 492 (N.Y. App. Div. 2018) (internal quotation omitted). Since "a court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to," *id.*, contracts with open terms do not bind the parties "unless . . . the agreement refers to an objective extrinsic event, condition, or standard by which the material terms may be determined." *Id.* (*quoting Carmon v. Soleh Boneh Ltd.*, 614 N.Y.S.2d 555, 556 (1994).

The Employment Contract, as it relates to Adler's commissions, is an unenforceable agreement to agree. Plaintiff believes he is owed commissions under the Employment Contract, which explicitly contemplates "further discussion" regarding Adler's "entitlement to a bonus equity to 3.5% of the Trading Desk Profit," to be memorialized in a "supplement to this letter" containing "additional terms . . . concerning the bonus calculation and targets, and other terms." (Compl. ¶¶ 29, 63-64; Ex. A). Since further discussions were contemplated, mutual assent regarding all material terms to be negotiated had clearly not been reached. Plaintiff cannot, and does not, allege a breach of contract claim for Payward's failure to continue negotiating, and on the contrary, allegations in the Complaint demonstrate that Plaintiff and Payward did continue negotiating his commission throughout the employment period. (*See* Compl. ¶¶ 46-48). These allegations only provide further evidence that the parties "contemplate[d] further negotiations and the execution of a formal instrument," *Miller v. Tawil*, 165 F. Supp. 2d 487, 491 (S.D.N.Y. 2001).

There is consequently nothing for the Court to enforce.

Since Plaintiff cannot establish entitlement to a commission as a matter of law, Defendant succeeds in proving to a legal certainty that Plaintiff's claims fall to a maximum of $15,000, comfortably below the $75,000 amount in controversy requirement. As a result, the Court lacks subject matter jurisdiction over this action and Defendant's 12(b)(1) motion to dismiss is GRANTED.

## II. Defendants' 12(b)(6) Motion

Since the Complaint must be dismissed for lack of subject matter jurisdiction, the Court does not reach the additional arguments raised in Defendant's 12(b)(6) motion.

## III. Plaintiff's Motion for Leave to Amend

Leave to amend is to be granted "freely . . . when justice so requires," Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000). "However, in determining whether leave to amend should be granted, the district court has discretion to consider, *inter alia*, the apparent futility of amendment." *Grace*, 228 F.3d at 53 (internal quotation omitted). It is well established that "[o]ne appropriate basis for denying leave to amend is that the proposed amendment would be futile because it fails to state a claim." *Nettis v. Levitt*, 241 F.3d 186, 193 (2d Cir. 2001), *overruled on other grounds by Slayton v. Am. Exp. Co.*, 460 F.3d 215 (2d Cir. 2006); *Hayden v. Cty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

Plaintiff proposes amending the Complaint to replace the reference to N.Y. Lab. Law § 191-C, which Plaintiff concedes is inapplicable to the facts of this case, with N.Y. Lab. Law § 191(1)(c). Such an amendment, however, would be futile because "N.Y. [Lab.] L. § 191(1)(c) . . . does not create an independent cause of action apart from breach of contract." *Derven v. PH*

7

*Consulting, Inc.*, 427 F. Supp. 2d 360, 369 n.6 (S.D.N.Y. 2006).  Since Plaintiff fails to establish a contractual right to a commission, his Section 191(1)(C) claim fails as well.  Accordingly, Plaintiffs' motion for leave to amend is DENIED.

## **<u>CONCLUSION</u>**

Defendant's motion to dismiss the Complaint pursuant to Rule 12(b)(1) is GRANTED.  Plaintiff's cross motion to amend the Complaint is DENIED.  The Clerk of the Court is instructed to close the motion at Dkt. 21 and close this case.

Dated: New York, New York
      September 5, 2019

SO ORDERED

PAUL A. CROTTY
United States District Judge