UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
:
ROBERT C. ADLER, :
:
                *Plaintiff*, : **DECISION & ORDER**
:
   *-against-* :
: 18-cv-8100 (PAC)
PAYWARD, INC. d/b/a Kraken, :
:
               *Defendant.* :
:
------------------------------------------------------------X

This case arises from Plaintiff Robert C. Adler's former employment with Defendant Payward, Inc. d/b/a Kraken ("Payward" or "the Company"). Adler asserts that his written employment agreement ("Agreement") entitled him to a bonus of "3.5% of the Trading Desk Profit" but that his bonus was wrongfully withheld. Adler brings claims against Payward for breach of contract, *quantum meruit*, and breach of the covenant of good faith and fair dealing. Adler also seeks to double the breach of contract damages pursuant to N.Y. Labor Law § 191.

On April 28, 2023, Payward moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The crux of Payward's motion is that the Agreement's bonus provisions are "unenforceable." Def.'s Mem. Law Supp. Mot. Summ. J. ("MSJ") 13, 17, ECF No. 94. Payward also contends that Adler's *quantum meruit* claim is "duplicative" of the breach of contract claim; that no covenant of good faith can be implied; and that Adler's claim for "additional statutory damages" does not fall under N.Y. Labor Law § 191. *Id.* 18–20.

Adler counters summary judgment because the Agreement "expressly recognizes" that "Payward and Adler agreed that Adler would receive 3.5% of the Trading Desk Profit." Pl.'s Mem.

1

Law Opp'n Mot. Summ. J. ("Opp'n") 16, ECF No. 98. Moreover, he contends that the "calculation of profits, and Adler's share of the profits, may be ascertainable . . . by reference" to extrinsic evidence. *Id.* at 18. Adler also contends that because there is a dispute as to the existence of a contract, he may pursue recovery via *quantum meruit* in the alternative. *Id.* 22. Adler does not adequately counter Payward's contentions concerning the covenant of good faith and statutory damages. *See id.* 20–21.

For the reasons that follow, Payward's motion for summary judgment is denied in part and granted in part. There are clear and substantial issues of fact pertaining to bonus compensation. With respect to the covenant of good faith and fair dealing, summary judgment is granted because Adler was an "at will" employee. And, Adler is not entitled to double damages because Adler was not a comission employee.[1]

## I. Background

In the spring of 2017, Adler negotiated employment at Payward, a cryptocurrency company. Jonathan Silverman was in charge of Payward's Institutional Sales and Trading Business (referred to as the "Trading Desk"). Marion Decl. Ex. A ("Adler Tr.") 31:24–32:11, ECF No. 96-1; Groothuis Decl. Ex. B ("Def.'s Adler Tr.") 24:14–23, ECF No. 93-2. The Trading Desk was responsible for buying and selling cryptocurrency and traditional currency. *See* Marion Decl. Ex. B ("Ng Tr.") 56:8–25, ECF No. 96-2.

In June of 2017, Adler "was flown out to San Francisco" to meet with Payward's Chief Executive Officer, Jesse Powell, and Chief Financial Officer, Kaiser Ng. Adler Tr. 38:16–25. The

---

[1] **Any issues or arguments raised by the parties but not specifically addressed in this Decision & Order have been considered by the Court and rejected.**

purpose of the trip was to discuss "what [Adler's] role would be" and "what they were looking to accomplish with the trading desk in New York." *Id.* 39:2–6.

Following the trip, Adler exchanged emails back and forth through Jonathan Silverman or directly with Powell about specifics. *Id.* 39:7–13. On August 22, 2017, Payward offered Adler a job with the Trading Desk with a one-page letter (the Agreement) that stated the following: Adler's "base salary will be $125,000 per year"; Adler "will be granted 20,000 stock options"; and Adler "will also receive health and other benefits." *See* Groothuis Decl. Ex. A ("Agreement"), ECF No. 93-1. The Agreement also included bonus compensation, as follows:

> In addition to the foregoing and per our prior discussions (**which included your entitlement to a bonus equity to 3.5% of the Trading Desk Profit**), the Company expects to supplement this letter, after you become an employee and after further discussion with you, with additional terms to be mutually agreed to, concerning the bonus calculation and targets, and other terms applicable to this position and to the Trading Desk's business proposal.

*Id.* (emphasis added). Adler, Silverman, and Powell each executed the Agreement. *Id.*

The "prior discussions" mentioned in the Agreement referred to conversations between Adler and Silverman. "Jonathan shared with [Adler] an understanding that . . . the overall bonus pool for the trading desk would be 20 percent and that he would be taking 10 percent of that and, therefore, there was another 10 percent to be allocated among team players and of that 10 percent, [Adler] would be getting 3.5 percent." Adler Tr. 46:8–16. A document, dated August 15, 2017, called the "Trading Desk Profit Performance Based Bonus ("Trading Desk Profit Performance Bonus Document" or Bonus Document)," was drawn up. Groothuis Decl. Ex. D, ECF No. 93-4. This document defines "Trading Desk Profit" as "[a]ll profits generated by the Trading Desk plus the profit and/or loss on Kraken Capital less Trading Desk Operating Expenses." *Id.* at 5. The

3

parties do not appear to have executed the Bonus Document. *See* Def.'s 56.1 Statement ¶ 15, ECF No. 95.

In September 2017, Adler began managing the Trading Desk. *See* Agreement; *see also* Def.'s 56.1 Statement ¶ 12. At or about this time, employees who worked on the Trading Desk "tracked and calculated" the Trading Desk profit and bonus amounts. Ng. Tr. 29:25–30:2. "[Ng] would put together [his] own data and create [his] own version of the calculation, because that way [he] kn[e]w for sure these numbers are consistent with how [he] was seeing it, and then [they] would compare notes and discuss." *Id.* 91:1–5. Ng had "quite a few conversations" with Adler about "the calculation of the Trading Desk profit" during the period February to May of 2018 apparently. *Id.* 91:6–21; Marion Decl. Ex. C ("Emails") at 18, ECF No. 96-3.

Ng disagreed with Adler's bonus calculation. *See* Emails at 16. For example, Adler and Ng disagreed over the amount of the "starting balance" and the amount of the "cost of capital." *See* MSJ at 6. Adler relied upon "the methodology that Jonathan was taught to calculate" and where "the initial capital was considered to be 500 XBT." *See* Emails at 9, 12. Adler challenges Payward's reliance upon 20% cost of capital, contending that 20% cost of capital "was not discussed during 2017." *Id.* at 12. That "level is high and not reflective of the conversations that occurred which referenced a 5% cost of capital." *Id.* Ng and Adler "had weekly, if not daily conversations" about "how to calculate the profit for 2017." *See* Def.'s 56.1 Statement ¶ 27.

Payward terminated Adler without cause at the end of May of 2018 without paying him any bonus. *See id.* ¶ 41.

## II. Prior Litigation

On September 4, 2019, SDNY District Judge Paul Crotty granted Payward's motion to dismiss Adler's complaint, concluding that "[t]he Employment Contract, as it relates to Adler's

4

commissions, is an unenforceable agreement to agree." *Adler v. Payward, Inc.*, No. 18-cv-8100, 2019 WL 4222656, at *3 (S.D.N.Y. Sept. 4, 2019). Upon appeal to the Second Circuit, the ruling dated September 4, 2019 was vacated and the case was remanded for further proceedings. *See Adler v. Payward, Inc.*, 827 F. App'x 133, 136 (2d Cir. 2020). The Court of Appeals stated: "When Adler's allegations in his complaint are accepted as true," Adler "plausibly alleged that the parties agreed that he would be paid a commission." *Id.* "The employment agreement, which was executed by both parties, referred to his '*base* salary' of $125,000 per year, implying that there would be something more, and it referred to his '*entitlement* to a bonus equity to [*sic*] 3.5% of the Trading Desk Profit.'" *Id.* (emphasis added). "Discovery — including, for example, as to the parties' course of performance, further communications, industry practice or custom, the doctrine of *quantum valebat*, or other objective criteria — may provide a basis for filling in any missing terms." *Id.* "In light of [the Second Circuit's] decision to vacate the dismissal of the complaint," the "decision denying Adler leave to amend his complaint" was also vacated. *Id.*

### III.  Adler's Amended Complaint

Adler filed an Amended Complaint on November 16, 2020, asserting three claims against Payward. *See* Am. Compl., ECF No. 35. In Count I, Adler asserts Payward "materially breached the Employment Contract by failing to remit to Plaintiff the bonus commission(s) that Plaintiff is due pursuant to the Employment Contract." *Id.* ¶ 66. In Count II, Adler asserts Payward breached the "covenant of good faith and fair dealing implied in the Employment Contract" by "material breaches," an "attempt to alter the Employment Contract," and by "firing Plaintiff rather than pay him his commission bonus." *Id.* ¶ 80. In Count III, Adler asserts that "*if* the finder of fact in this action determines that there was no enforceable contract between the parties, then in the alternative

5

Plaintiff is entitled to recover from Defendant, in quantum meruit, for the reasonable value of services Plaintiff rendered." *Id.* ¶ 86.

Payward filed the instant motion for summary judgment on April 28, 2023, as noted. ECF No. 92. Adler opposed the motion on May 12, 2023. Opp'n, ECF No. 98. And, Payward filed a reply on May 19, 2023. Def.'s Reply Mem. L. Supp. Mot. Summ. J. ("Reply"), ECF No. 99.

### III. Analysis

Issues of Fact

"A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried . . . ." *Duse v. Int'l Bus. Machines Corp.*, 252 F.3d 151, 158 (2d Cir. 2001). The movant bears the heavy burden of demonstrating the absence of any dispute of material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views the evidence in the light "most favorable to the opponent of the moving party, giving the opponent the benefit of all favorable inferences that may reasonably be drawn." *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2d Cir. 1999).

Where, as here, reasonable people might reach different conclusions, "the motion should be denied and the case tried on its merits." *Id.* at 160–61. And where, as here, a plaintiff "raise[s] issues of fact as to whether the parties entered into an actual contract and as to the specific terms incorporated into such contract," summary judgment should be denied. *Tokio Marine & Fire Ins. Co. v. Fed. Marine Terminal, Inc.*, 397 F. Supp. 2d 530, 535 (S.D.N.Y. 2005). "[I]f it is necessary to refer to extrinsic facts, which may be in conflict, to determine the intent of the parties, there is a question of fact, and summary judgment should be denied." *Am. Exp. Bank Ltd. v. Uniroyal, Inc.*,

6

562 N.Y.S.2d 613, 614 (N.Y. App. Div. 1990).

Dispute Over Bonus Amount

Payward asserts (unpersuasively) that summary judgment in favor of Payward is warranted because the parties reached an "agreement to agree" but "did not have a binding contract." MSJ at 13–14. Payward claims that Adler has not proffered "evidence necessary to make Plaintiff's claim to a bonus enforceable," e.g., with respect to defining "Trading Desk Profit." *Id.* 15, 17. Adler counters persuasively that there are genuine issues of material fact.

"To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. & Terminal Corp. v. New York State Dep't of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999). "When a bonus that is an integral part of a compensation package has already been earned by the time the employer decides not to pay it, the latter can no longer argue that such bonus is discretionary; at that point, failure to pay it constitutes a breach of the contract of employment." *Simpson v. Lakeside Engineering, P.C.*, 809 N.Y.S.2d 710, 711 (N.Y. App. Div. 2006) (quoting *Sipkin v. Major League Baseball Advance Media*, No. 570623, 2005 WL 2653955, at *1 (N.Y. App. Term. Oct. 17, 2005)).

There are clearly issues of material fact as to the bonus, including the bonus amount. The Agreement clearly provides that "per our prior discussions" Adler had an unconditional "**entitlement** to a bonus equity to 3.5% of the Trading Desk Profit." *Adler*, 827 F. App'x at 136. The Agreement referred to Adler's "'*base* salary' of $125,000 per year, implying that there would be something more." *Id.* Powell and Silverman executed the Agreement and asked Adler to "sign and date below to confer [his] acceptance of [his] position." Adler and Ng corresponded about the bonus and "exchanged competing calculations of that year's Trading Desk Profit." *Id.* Ng sent

7

Adler a link to "view the 2017 P&L and commission calculations," and Ng, Powell, and Adler discussed "finaliz[ing] the 2017 profit calculation." Emails at 13, 18.

Payward seemingly asserts that, even if Adler were entitled to a bonus, the bonus provision of the Agreement is unenforceable and there is no basis for the court to fill in the gap. *See* MSJ at 15, 17. But where, as here, it is "clear from the language of an agreement that the parties intended to be bound and there exists an objective method for supplying a missing term, the court should endeavor to hold the parties to their bargain." *Vizel v. Vitale*, 125 N.Y.S. 3d 166, 169 (N.Y. App. Div. 2020). **"Under New York law, '[t]hat the exact amount of the promised bonus payments is not specified is not fatal to plaintiff's claim.'"** *Bravia Cap. Partners, Inc. v. Fike*, No. 09-cv-6375, 2011 WL 6081345, at *5 (S.D.N.Y. Dec. 6, 2011) (emphasis added) (quoting *Giuntoli v. Garvin Guybutler Corp.*, 726 F. Supp. 494, 509 (S.D.N.Y. 1989)). "A compensation term is not indefinite [] simply because it fails to specify a dollar figure or a particular compensation formula to be employed." *Stone Key Partners LLC v. Monster Worldwide, Inc.*, 333 F. Supp. 3d 316, 334 (S.D.N.Y. 2018). "In limited circumstances, a court may supply a missing term . . . if the contract is ambiguous and the term 'may be fairly and reasonably fixed by the surrounding circumstances and the parties' intent.'" *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 122 (2d Cir. 2014) (quoting *Haines v. City of New York*, 364 N.E.2d 820, 822 (N.Y. 1977)).

As pertains to Adler's bonus, "Trading Desk Profit" is not precisely defined in the Agreement. *See id.* at 123. Adler and Ng understood the meaning of "Trading Desk Profit" differently, suggesting different inputs and applying them in a way that resulted in different profit and bonus calculations. Emails at 9, 12–13; Ng Tr. 54:12–22; Adler Tr. 135:13–136:21. In this case, the court "may turn to evidence extrinsic to the [A]greement's four corners to ascertain the intent of the parties." *Scholastic, Inc. v. Harris*, 259 F.3d 73, 82 (2d Cir. 2001). Extrinsic evidence

8

might include "the parties' course of performance, further communications, industry practice or custom, the doctrine of *quantum valebat*, or other objective criteria." *Adler*, 827 F. App'x at 136. Where, as in this case, "'the court must resort to extrinsic evidence to ascertain the correct and intended meaning of a term, material questions of fact necessarily exist." *See Safeway Env't Corp. v. Am. Safety Ins. Co.*, No. 08-cv-6977, 2010 WL 331693, at *3 (S.D.N.Y. Jan. 28, 2010) (quoting *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998)). That is, "where there is relevant extrinsic evidence of the parties' actual intent, then the contract's meaning becomes an issue of fact precluding summary judgment." *Id.*

Some (but not all) of the issues of fact surrounding the bonus which preclude summary judgment relate to: (i) history of using a particular methodology for calculating a bonus, *see* Emails at 9; Ng Tr. 29:25–30:8; Adler Tr. 113:3–23, 135:13–136:21; (ii) methodology that was applied to other employee bonuses, *see* Def.'s Adler Tr. 46:3–7; Ng Tr. 29:7–19; Groothuis Reply Decl. Ex. B 83:12–17, ECF No. 100-2; and (iii) use of profit (overall) in calculating bonuses. *See* Def.'s Adler Tr. 80:12–15; Adler Tr. 46:8–16; Groothuis Decl. Ex. C 87:25–88:3, 56:1–7, ECF No. 93-3; Def.'s Resp. Pl.'s Rule 56.1 Statement ¶ 57, ECF No. 101. Courts have identified various kinds of evidence "for determining bonus amount, including bonus history, the employee's profitability for the firm, and the firm's overall profits." *Bravia*, 2011 WL 6081345, at *5. A jury is required and appropriate to determine the amount of bonus in this case.

Accordingly, because there are substantial disputed issues of fact, Payward's motion for summary judgment as to the breach of contract claim is denied. *See Lee v. Kylin Mgmt. LLC*, No. 17-cv-7249, 2019 WL 3454665, at *4 (S.D.N.Y. July 31, 2019); *Xu v. J.P. Morgan Chase & Co.*, No. 01-cv-8686, 2003 WL 25964617, at *3 (S.D.N.Y. Sept. 24, 2003).

Quantum Meruit

Payward contends that, among other things, the Agreement is a "valid, enforceable contract" and that Adler is precluded from bringing a quasi-contract claim "that governs the same subject matter." MSJ at 20. Adler responds that there is a dispute over the validity of the Agreement—certainly with respect to Adler's bonus—and that this dispute entitles him to pursue recovery in *quantum meruit*. *See* Opp'n at 22. The Second Circuit Court of Appeals has ruled that where "there is a bona fide dispute as to the existence of a contract or whether the scope of an existing contract covers the disagreement between the parties, a party will **not** be required to elect his or her remedies and may proceed on both quasi contract and breach of contract theories." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 188 (2d Cir. 2023) (quoting *M/A-Com, Inc. v. State*, 910 N.Y.S.2d 246, 247 (N.Y. App. Div. 2010)) (emphasis added).

Payward views the bonus provision as an "unenforceable 'agreement to agree'" where "any future bonus payment was contingent upon the parties coming to a new agreement on future terms." MSJ at 14. Adler contends persuasively that the Agreement "was unmistakably intended to be a binding agreement," and there are also "genuine issue[s] of material fact to be determined" regarding how much money Adler is due. Opp'n at 13. Adler's *quantum meruit* claim "may stand in the alternative to [his] contractual claims." *See Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 236 (S.D.N.Y. 2013); *see also Bekhor v. Josephthal Grp., Inc.*, No. 96-cv-4156, 2000 WL 1521198, at *7 (S.D.N.Y. Oct. 13, 2000).

Amount of Damages

Adler asserts that he is "entitled to a statutory doubling of his Commission-based damages" because Payward did not timely pay him his bonus in violation of N.Y. Lab. Law §191(1)(c). Am. Compl. ¶¶ 75–77. Payward argues that § 191(1)(c) is inapplicable because it applies only to a

10

person who is a "commission salesman," and that "does not include an employee whose principal activity is of a supervisory, managerial, executive or administrative nature." N.Y. Lab. Law § 190(6).

In its Rule 56.1 Statement of Undisputed Material Facts, Payward asserts that "Plaintiff was not a 'commissioned salesperson' at Payward." Rather, "Plaintiff held a 'senior management' position while working at Payward." *See* Def.'s 56.1 Statement ¶¶ 11–12. In response, Adler acknowledged that he "was not a 'commissioned salesperson' at Payward" and that he "had a management position." Pl.'s 56.1 Resp. ¶¶ 12–13, ECF No. 97.

Adler, not having been a commission employee, is not entitled to double his damages under N.Y. Labor Law §191. *See Pachter v. Bernard Hodes Grp., Inc.*, 891 N.E.2d 279, 283 (N.Y. 2008). Payward's motion for summary judgment on this claim is granted. *See Henkel v. Wagner*, No. 12-cv-4098, 2016 WL 1271062, at *8–9 (S.D.N.Y. Mar. 29, 2016).

Covenant of Good Faith and Fair Dealing

Adler argues that Payward breached the implied covenant of good faith and fair dealing because of Payward's "material breaches" and "attempt to alter" the Agreement, and because Payward fired Adler rather than paying him his bonus. Am. Compl. ¶ 80. Payward counters that "no implied obligation of good faith and fair dealing arises from at-will employment." MSJ at 19.

"New York does recognize that in appropriate circumstances an obligation of good faith and fair dealing on the part of a party to a contract may be implied and, if implied will be enforced." *Murphy v. Am. Home Prod. Corp.*, 448 N.E.2d 86, 91 (N.Y. 1983). This obligation "is not without limits, and no obligation can be implied that 'would be inconsistent with other terms of the contractual relationship.'" *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 292 (N.Y. 1995) (citation omitted). Where, as here, the "plaintiff's employment was at will, a relationship in which

11

the law accords the employer an unfettered right to terminate the employment at any time, . . . it would be incongruous to say that an inference may be drawn that the employer impliedly agreed to a provision which would be destructive of his right of termination." *Murphy*, 448 N.E.2d at 91. As there is no factual dispute about the nature of Adler's at-will employment, *see* Def.'s 56.1 Statement ¶ 41; Def.'s Adler Tr. 162:12–14, Adler's claim fails as a matter of law. *See Zaltz v. Wells Fargo Home Mortg.*, No. 08-cv-11225, 2010 WL 3026536, at *5 (S.D.N.Y. Aug. 2, 2010). Payward's motion for summary judgment as to this claim is granted. *See McGimpsey v. J. Robert Folchetti & Assocs., LLC*, 798 N.Y.S.2d 498, 500 (N.Y. App. Div. 2005).

## IV. Conclusion & Order

For the foregoing reasons, Payward's motion for summary judgment [ECF No. 92] is denied with respect to the breach of contract and *quantum meruit* claims. Summary judgment is granted with respect to the N.Y. Labor Law and breach of the implied covenant of good faith and fair dealing claims.

The Court will hold a conference with the parties and principals at 2:00 P.M. on April 10, 2024 in Courtroom 17B, 500 Pearl Street.

Date: New York, New York
March 14, 2024

*RMB*
**RICHARD M. BERMAN, U.S.D.J**